May it please the Court. Jennifer Sparks for the Petitioner Appellant Tasha Christine Wolfe. Your Honors, my client Tasha Wolfe has only a couple of issues here in this Court, and these issues are not unusual. She claims first that her trial counsel was ineffective, and then she also claims that her confession to the police was both involuntary and obtained in violation of Miranda. Now, these issues are frequently seen by this Court. In this case, though, I think the facts are a little bit more unusual, and if you look at the facts on both of these different issues, it paints a picture that is a little bit more rare and unusual for what this Court typically sees. Now, this is a habeas petition, and it is governed by the AEDPA standard. So in order to get habeas relief, my client has to show that the State court decision was either contrary to or involved an unreasonable application of clearly established Federal law as determined by the U.S. Supreme Court, or that the State court decision was based on an unreasonable determination of the facts in light of the evidence presented at the State court. Now, that is a difficult and deferential standard to meet, but in this case, I think you can find that it was met. I have two specific questions about the Miranda invocation. Number one, is there a videotape of the interrogation that was in the district court? There is a videotape, and I don't know. I know it's referenced in the State court proceedings. My question is, was it offered to the district court? No, it wasn't. Okay. So the second question I have goes to how this was argued in the State court with respect to the right to silence as distinguished from the right to counsel, because in the State court ruling, it talks about Davis, and it doesn't seem to split things up. So there doesn't seem to be a State court ruling on invocation of right to silence. Was that argued to the State court? I think that the way it was argued in the State court was that the attorney was perhaps arguing it in both ways. I mean, she clearly invokes her right to counsel, and that was what was emphasized by her counsel, was the right to counsel prong, invoking counsel. However, she's also saying at the same time, I don't want to talk anymore. I don't want to tell my side of the story. I'm telling you that. So it's really both issues were looked at, and I agree. They were kind of jumbled together. But when this Court looks at them, I mean, you can look at it as if we don't have a clear State court ruling on the silence invocation, then we have a different standard we would be looking at. Correct? Yes, that's true. Well, what does that do for your case one way or the other? Because I'm just trying to understand if I see the date, I see the counsel issue, but if we don't have an application of Miranda by the State court to the right to silence, then do we look at that de novo? Well, if you find that that issue was not raised in the State court. No, that's not the question. That's not my question. I'm sorry. You just told me it was raised. I believe it was. Okay. So let's assume, and I was trying to unscramble the record because I don't think counsel here did any better job than the State court did to try to help us out. And assuming that right to silence was raised, if I read the State court ruling correctly, it didn't really talk about that. So would we look at that de novo? I believe you would. And what is, and in your view, what's the clearest indication in the transcript where the right to silence was invoked? Well, again, I think it's on page, on her confession, it's on page 96, and that was attached, and I don't remember which. It's excerpt of record 21, is that it? I believe that's correct, Your Honor. The easiest way for us to find it. We're looking at something called attachment of A, excerpt of record. Yes. And the first yes, EOR, excerpt of record 21 in our excerpts of records. And that's the first line. Well, if you look about it, she says, she's actually at this point already, EOR 20 is where you can start. And that's where she's at the top of the page. It says, that's up to you, the ball's in your court. Now, she's actually in the prior page kind of invoked her right to counsel, and I gather the prior page was not used in any of the State court proceedings. But the prior page to this, she had already said, I don't know, but I need an attorney, and the detective had said, I'm sorry, what? And she says, I've said, maybe I need an attorney. And they go on about that for a minute. So let me ask you about that. You say it's not in the State court proceedings, but the tape was in the State court proceedings. Yes, it was. So the State court obviously did view that videotape and had access to that. Well, let's get down to Judge McEwen's question. Where is the clear invocation of the right to silence? And can you show us where, and I'd suggest you start on page 21 since we don't have a lot of time. Yes. Where she says that she wants to remain silent. Yes. In fact, I'll start at the very bottom of EOR 20, and that's where he says, the detective says, do you want an attorney or do you not want an attorney? I realize that's talking about an attorney, but it's also going to lead to an interview. It leads you to where she says. Yes. That she already told him that I didn't want to talk to you. Anymore. And they say, you don't want to tell us your side. And she says, no, I already just told you I don't want to tell you. Yes. Those are the two times where I think it's very clear. She says, I already did. I already just told you I didn't. And he says, you didn't you don't want to tell us your side? No, I already just told you I didn't want to tell you. I think that's a very clear invocation of the right to silence. And they should have stopped right there after she says, at least after she says, no, I already just told you I didn't want to tell you. What's to clarify? What's ambiguous there? I mean, as this Court has said in Anderson v. Terhune, if it's not ambiguous, you don't need to get into clarifying questions. Here the State court found that the next questions in the next series of exchanges was the detective's attempting to clarify whether she was or wasn't invoking her rights, but that isn't even ambiguous there. Well, she seems to be there talking about whether she wants an attorney or not, not whether she wants to quit talking. I think, yeah. I think you could construe it in either way, though. It started off with, are you going to? Well, then that's ambiguous if it can go either way. I don't mean it's ambiguous if she's invoking, but I think you could. It goes both ways. She says she wants to remain silent. Yeah. And I already told you I didn't want to. The question, Judge McKeon asked at the beginning, is are these two separate rights, to remain silent and the right to have an attorney? Do they have to be finding separately? A violation of either one is a violation of Miranda. Correct. A violation of either one. If you're clear that you want to remain silent, does it matter whether you're ambiguous about wanting an attorney? I don't think it matters. If you invoke your right to silence, it's kind of like the same in the Anderson case. I plead the Fifth. That was an invocation, I guess, of the right to silence. If you clearly invoke that, questioning should cease. And I think that's the same. It's also just as clear here. I already told you I didn't want to tell you. Twice. I already did. I just told you. No, I already told you I didn't want to tell you. I guess that's actually four times. I don't want to tell you. I don't want to talk. I plead the Fifth. I don't want to tell you my side of the story. Yeah. And then we have exactly what they're not supposed to do, following up. The problem is, if you want to tell me, you either want to have an attorney or you don't. And they do talk about an attorney at that point. And they're going on saying, well, I want to clarify this in my mind. And, you know, do you not want or do you want an attorney? And then it goes on to the next page about, you know, if you want to tell us your side of the story, why don't you tell it like you want to tell it, and things like that. That's what they're not supposed to do. They're supposed to stop. She's clearly invoked. I think in addition to the Miranda issue, though, very significantly here is the violation of the 14th Amendment and her due process violation. Because this confession was not just in violation of Miranda, but if you look at the totality of the circumstances, it was involuntary. I haven't seen another case that was quite like this. There are other ones. It would have helped to have the videotape before the district court, though, so we could understand the nature of the interrogation, wouldn't it? I think, yes, I think it would, Your Honor. And that probably should have been done, yes. If you just look at the transcript alone, though, you can certainly see a lot of things. If you look at the transcript and the involuntariness hearing, it was an over nine-hour interrogation. She was up all night. They arrested her at 3.30 in the morning. They started interrogating her at 5 in the morning. They knew at the very beginning that she was in heroin withdrawal. She expresses her discomfort numerous times. An addiction specialist testified at the voluntariness hearing regarding her discomfort and her not only discomfort but psychological fear of death at various points. They recessed the interrogation. They come back four hours later, and her condition is just a mess. And that's when she finally confesses. All right. Well, I ask you to clarify something. What was your position on did the State court rule on both the Miranda claim and the counsel claim or not? On the Miranda claim and the voluntariness claim? The Miranda claim and the claim of counsel. Did the State court rule on each of those issues? Not separately, no. What? I don't think the court separately ruled on each of those. The court lumped it together as one Miranda. Well, is the issue exhausted, then? I think that trial counsel attempted to. Appellate counsel raised it, and he did try to exhaust it. Well, the State court didn't rule on it. Which claim didn't they rule on? They talked about her right to counsel, but they didn't really talk about the right to silence. All right. So you say, but you still claim that's been exhausted? There's no – the State's never argued it hasn't been exhausted. Well, I'm asking you. Okay. It's an arguable question. Our position would be that it was exhausted because the way that the court ruled, if you read, there are mentions that she doesn't want to talk as well as that she doesn't – that she's trying to invoke an attorney. So both are sort of jumbled together. Well, they're jumbled together by the court. But if you raise them, you've exhausted them. I'm sorry? If I've raised them? You raised them. Counsel raised them. They're exhausted. And then if the court didn't deal with them, that's a question of what standard we apply. Do we have that in the – in your brief, how the State counsel raised it in the State proceeding? Yes. Yes, I believe. Maybe what you could do is we could hear from the government. Thank you. And we'll give you a couple minutes for rebuttal, even though we've used your time. Thank you. May it please the Court. My name is John Anderson, representing the State of Arizona, and Respondent Hennessey. I will address quickly the voluntary in this issue first. As Justice – sorry, promotion – Judge McKeown has pointed out, the videotape is not present in the Federal court record. There's a presumption of correctness in the State court's voluntariness findings. There was a four-day hearing. There was an extensive minute entry that found that the statements were, in fact, voluntary. Moving on to the second issue, the recently certified issue, the issue that's raised first as to what was raised in her brief. At page 27 of Appellant's brief, it says, given after Asha invoked her right to counsel, so the issue raised on appeal is invocation of the right to counsel under Edwards. The – as to whether – You briefed the question of silence, didn't you? I'll tell you what I mean. You say in your brief, if a criminal suspect indicates in any manner during questioning that she wishes to remain silent, the interrogation must cease, said in Miranda. Any statement taken after invocation of the privilege would constitute the product of compulsion. I'm sorry. What page is that? Page 13 of your – Supplemental brief? Your supplemental brief. Yes, that's true. I think we are talking about – because Edwards comes originally from Miranda, and I think that was just background. If you note the heading on page 13, it's invocation of the right to counsel. So I think the question here is whether or not the State court fairly applied Davis, which is the case on whether there's a clear invocation of counsel. There was a motion to suppress the statement, but it's EOR 14. Mr. Gerloff, the new attorney, there had been a voluntariness hearing. The first hearing was strictly on the issue of voluntariness, and there was a four-day hearing and extensive minute entry. After there was new counsel, he said, wait a minute, I think there's another issue here. So Mr. Gerloff filed a motion to suppress statements, and that was based on a stipulated record. It was three pages from the transcript, and the Court's well aware of those three pages. And I would say it can be argued either way. So it's an ambiguous invocation, and the defendants clarified. As to whether or not the court of appeals addressed this issue, if you look at EOR 314, court of appeals opinion specifically says invocation of right to counsel. And then you look at 317. It specifically applies Davis v. United States. Therefore, we would argue. Did you say that again? I'm sorry. I was speaking a little fast. And I'll try to speak up a little bit. At EOR 317, the Arizona court of appeals on the direct appeal specifically addressed this issue in light of Davis v. United States. It mentions Davis, I believe. That's addressing the Miranda issue? Pardon me, sir? What are you saying was addressed at 317? That's the invocation of right to counsel. That's the Sixth Amendment issue that they addressed. Okay. Then how about the right to silence? The Court did not address that. It was briefed as a Davis right to counsel. That was my question, is how was it brought to the State court of appeals? Whether it was brought both as a Fifth Amendment? You're saying it was brought only as a right to counsel. Right. It was brought as an invocation of the right to counsel. It was an unexhausted claim. Right. It would be unexhausted. It was not dealt with by the Arizona court of appeals because it wasn't raised. Well, but that would mean it's unexhausted if it wasn't. The fact that they didn't deal with it doesn't mean it's unexhausted. The question is what was presented to them. So I was just going back to that. Right. You have a better handle on that. I believe it was not properly presented and, therefore, they did not deal with it. So the Davis fine, I realize they're related, the silence and the invocation of counsel, which are related, but the one that was squarely presented to the Arizona court of appeals was the Davis issue, which they dealt with. And that was a reasonable application. There's no Supreme Court case law in this situation. We have Davis saying, I think you have, I believe it's Clark from this court saying, I think, in this case, do you want an attorney? I do, but, and I think the but is the key, that makes it ambiguous. If the Court doesn't have any other questions, I believe I'll retire. All right. Thank you, counsel. Your Honors, I do agree. I've looked at the record a little bit more, and it was briefed as a right to counsel issue by the appellate attorney for Ms. Wolf. So the issue that arose about the invocation of her rights that was briefed and that was decided was whether she had invoked her right to counsel. So I guess your contention is that the right to silence claim may not have been properly exhausted, and if that's the case, if I have a claim here that I've presented that's not been exhausted, you obviously have a much higher standard to look at it. Yes, I understand that. It's the cause and prejudice or the different standards for having this court review an unexhausted claim under AEDPA. So what could we do with that at this point? A couple of things. You could find that the transcript that talks about where she's discussing her rights in the transcript, it does start off as an attorney invocation. I think, I guess, we discussed this when I was up here the first time. Well, tell me, is it too late to remand to the State court? Pardon me? Is it too late? Is it too late to have this go back to the State court? No, I don't think it is, especially under the circumstances that, I mean, the State has not raised this as being unexhausted at all at this time. And so I think she would be entitled to go back on that. The one issue, though, is that the problem with the question of more precisely is, you know, sometimes we send these things back, but that's where the counsel has raised it. So is it raised as in the Miranda Fifth Amendment claim in the district court? I believe so. I know I've cited the Fifth Amendment and I've raised it under Miranda. I believe that it would the district court considered it under both. But I didn't really see that in the district court either. I mean, the district court says in right of self-incrimination, but in the context of voluntariness, they talk about Miranda. So it was not clear to me how it was raised. Is raising Miranda enough to raise the issues resolved by Miranda? Because Miranda involves the right to counsel and the right to silence. But you're saying it's not raised in the state court, the right to silence. It appears that it was not, no. I think this Court, though, can certainly focus on the involuntariness issue, which clearly was raised, clearly was exhausted, and I think clearly is very significant here. She, as I was talking about before, she has, you know, the all-night interrogation, the withdrawals, the physical symptoms, the psychological fear that the addiction specialist testified regarding. She wasn't just kept up all night and deprived of sleep. I think that the police courts ---- Well, you recognize the real problem there is we might agree with you, but was the state totally, you know, was it objectively unreasonable? I think it was, Your Honor. And, you know, you do have to give a lot of deference under AEDPA, but as the Court has said, AEDPA deference is not a rubber stamp to the state court's findings. And I think it was unreasonable in light of the ---- looking at the totality of the circumstances. This is one area of the law where you have to really look at the totality. The totality here involves a lot of factors. And, you know, in looking at all the other cases on voluntariness, I didn't find one where it was such a long interrogation, up all night. You know, most of us are, if we stay up all night in a police interrogation room and have had no sleep after just working, coming off of work, being arrested and being taken in, your mind is going to be a little addled just from the lack of sleep. Looking at the totality, though, you also have to factor in she was in heroin withdrawal. She tells them this very early on. She's in discomfort. Her discomfort is getting worse. Is in the totality of the circumstances, as you describe all those things, is the violation of Miranda and the right to silence a factor that's considered in the totality? It is a factor to be considered in the totality, but the voluntariness inquiry for the overall voluntariness of her confession in general depends on many things. Including that? Yes. If you look at, you know, she's not answering questions that well. And as time goes on and on, I know that the findings were that she was rational and coherent. But the fact that a person can address a question and give some sort of answer that seems to comport, if you compare that with her trial testimony, you can see that she really wasn't in her correct frame of mind and wasn't answering questions that well at the time of the interrogation. And the police, there is coercion. I know you're going to say that we need to find coercion here. There was coercive activity. The police took a four-hour break for not a very understandable reason. She went to sleep during part of it, didn't she? She may have slept for some of it. She was groggy and drifting off, and somehow she has a blanket, which they say Didn't they find her asleep? Yeah. They come back in, and apparently she's asleep. They say, wake up, wake up. And she's very groggy, and so she may have dozed off some, but that doesn't They don't know. I mean, would the videotape show us that? Yes, no, we don't know. We see her sitting there, and she's kind of No, but we don't have the videotape. Right. I mean, that's really incomprehensible to me in a case where we're arguing government coercion, that we don't have the tape. I mean, that's why they taped these things. I apologize, Your Honor. I guess that's an oversight. We should have put the tape in there. We can get it, can't we? It wasn't in the district court. It's still in the state court, in the custody of the state court clerk, I believe. All right. Well, thank you. Thank you. Thank you both. The case just argued is submitted. The Court will take a brief morning recess.
judges: Reinhardt, Noonan, McKeown, Cjj